**Hendra Ugahary NGO, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–1999.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 21, 2009.

Opinion filed: Nov. 4, 2009.

Ephraim T. Mella, Esq., Philadelphia, PA, for Petitioner.

Edward J. Duffy, Esq., Yamileth G. Handuber, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SCIRICA, Chief Judge, SMITH and WEIS, Circuit Judges.

## OPINION

PER CURIAM.

Hendra Ugahary Ngo, an Indonesian native and citizen, petitions for review of a

final order of the Board of Immigration Appeals ("the Board"), affirming the Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition.

The Immigration and Naturalization Service placed Ngo in removal proceedings by the issuance of a Notice to Appear ("NTA") on May 13, 2003. The NTA charged Ngo with being removable pursuant to INA § 237(a)(1)(B), for remaining in the United States without permission of the government. Ngo admitted the factual allegations in the NTA and sought asylum, withholding of removal, and protection from removal under the CAT. Ngo's written application cited "mistreatment and pressure from people in the government" over the 50 years that he lived in Indonesia as the basis for relief. (A.R. at 432.) In particular, Ngo stated that he experienced discrimination in language, schooling, culture, and government benefits. He also experienced assaults in 1974 and 1978, and property damage in 1983. Ngo testified that he and his family were frequently threatened and harassed by Muslims both because of their Chinese ethnicity and because they were practicing Christians. In 1992 and 1997, Ngo witnessed discrimination and assaults against other ethnic Chinese. He also cited the May 1998 riots in which natives violently assaulted the persons and property of ethnic Chinese. During this period, although his family found safe refuge, Ngo testified that his home was damaged, his cars burned, and that he sustained injuries to his hand when it was hit with a ten-pound brick. Ngo testified that during church bombings in November 1998, his eyeglasses were broken. Worse, a man with whom he lived was murdered. In 1999, churches were bombed, causing car glass to shatter and cutting Ngo. According to the IJ's summary of Ngo's testimony, Ngo's church remained unharmed, as did his family.

At Ngo's first hearing, the IJ determined that Ngo had missed the one-year filing deadline for his asylum application. With regard to his withholding of removal and CAT claims, the IJ found Ngo incredible based on an omission in his testimony as compared to his written application. The IJ further found that Ngo failed to provide independent corroborating evidence in support of his testimony. On February 25, 2005, the Board affirmed the IJ's finding with regard to the timeliness of Ngo's asylum application. With regard to Ngo's remaining claims for relief, the Board found that the sole omission relating to his son's current fear of harm was not sufficient to support an adverse credibility finding. The Board remanded the case to the IJ to give Ngo the opportunity to present additional evidence.

On remand, the IJ again made an adverse credibility finding. The Board dismissed Ngo's appeal on March 4, 2008, without addressing the IJ's adverse credibility determination. The Board concluded that the alleged events did not rise to the level of persecution on account of a protected ground or demonstrate that Ngo faced a probability of future persecution if he returned to Indonesia. The Board also determined that Ngo failed to show that he was more likely than not to face torture on his return to Indonesia. Ngo timely filed a petition for review in this Court.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We uphold the Board's determinations if they are supported by reasonable, substantial and probative evidence on the record considered as a whole. *Yusupov v. Att'y Gen.*, 518 F.3d 185, 197 (3d Cir.2008). Under the substantial evidence standard, "the BIA's finding must be upheld unless the evidence not only

supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001) (*citing INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

To be eligible for withholding of removal, petitioners must demonstrate that "there is a greater-than-fifty-percent chance of persecution" in Indonesia based on one of the protected grounds. *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998); *see also* 8 U.S.C. § 1231(b)(3)(C). For relief under the CAT, Ngo must demonstrate that it is more likely than not that he would be tortured if removed to Indonesia. *See* 8 C.F.R. § 208.16(c)(2). The acts of torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).[1]

■ Ngo argues that the IJ overlooked critical evidence by concluding that he failed to establish past persecution and fear of future persecution. Specifically, Ngo claims that he has demonstrated eligibility for withholding of removal based on aggregated incidents of past mistreatment in Indonesia.

Ngo testified that during the riots of 1998, an organization of extremists comprised primarily of native Muslims burned down the Christian church he attended. Ngo also witnessed native Muslims burning down the homes of Chinese Christians near his home in Jakarta. Ngo testified to a code that was used to intimidate and threaten Christians, in which red and yellow colorings were painted on the homes of Chinese Christians. Red coloring on the home signified that Christians lived in the home and should be killed. A Christian home with yellow coloring indicated a female Christian resided in the home and should be raped. Ngo stated that he was affected by these actions because he had a female daughter and yellow coloring was placed on his house.

Ngo further testified that, when he lived in Indonesia he was often targeted while driving his car. During one incident, unidentified assailants in a truck threw stones at his car. In another incident, assailants "hit" Ngo while he was stopped at a traffic light and his eyeglasses were broken. (A.R. at 72.) In addition to the physical incidents, Ngo testified that the government discriminated against him by refusing to provide him with documents because of his Christian religion.

■ Ngo's claims of past persecution must fail because he has not shown that the incidents he describes were committed by the government or by forces the government is unable or unwilling to control.[2] *See Valdiviezo–Galdamez v. Att'y Gen.*, 502 F.3d 285, 288 (3d Cir.2007) (citation and internal quotation marks omitted).[3] Further, he has not demonstrated that the incidents he experienced were motivated by an anti-Christian or anti-Chinese animus. *See* 8 U.S.C. § 1101(a)(42)(A) (requiring that persecution be "on account of" a petitioner's religion or ethnicity); *see*

---

1. Ngo does not contest the BIA's timeliness determination with regard to his asylum application.

2. The only instance in which Ngo implicates the Government's involvement is with regard to the discrimination he faced when it refused to issue him certain requested documents. Such acts do not constitute persecution or torture.

3. While the Court in *Valdiviezo–Galdamez* was referring to persecution in the context of an asylum claim, the same substantive criteria apply to determining persecution for purposes of withholding of removal. *Wakkary v. Holder*, 558 F.3d 1049, 1053 (9th Cir.2009).

*also Lie v. Ashcroft,* 396 F.3d 530, 535 (3d Cir.2005). Finally, although the incidents Ngo describes were indeed unfortunate, they are not the type of harm recognized as constituting persecution under our precedent. *See Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.").

■ The Board's rejection of Ngo's claim to withholding of removal based on fear of future persecution is supported by substantial evidence because he had not presented evidence of his own persecution, or a pattern or practice of persecution of ethnic Chinese or Christians in Indonesia. *See Wong v. Att'y Gen.,* 539 F.3d 225, 232 (3d Cir.2008). In order to show a well-founded fear of future persecution the applicant must show a well founded subjective fear, "supported by objective evidence that persecution is a reasonable possibility." *Chang v. INS,* 119 F.3d 1055, 1066 (3d Cir.1997). The objective prong is satisfied either by showing that the applicant would be individually singled out for persecution, or that " 'there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion.' " *Sukwanputra v. Gonzales,* 434 F.3d 627, 637 (3d Cir.2006) (*quoting* 8 C.F.R. § 208.13(b)(2)(iii)(A)). Ngo provides no evidence to refute the finding that the record reflects steps by the Indonesian government to control and diffuse violence against Christians like Ngo.[4] (A.R. at 51–53.). Thus, Ngo has

failed to establish either past or a clear probability of future persecution based on one of the protected grounds. *See INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *see also* 8 C.F.R. § 1208.16(b).

■ The Board's rejection of Ngo's CAT claim also finds substantial support. Ngo has not presented any evidence that upon his return to Indonesia he would be tortured by the government or that the government would acquiesce in any torture of him by third parties. Thus, Ngo is not eligible for protection under the CAT. *Pierre v. Att'y Gen.,* 528 F.3d 180, 190 (3d Cir.2008) (en banc).

For the foregoing reasons, we will deny Ngo's petition.

---

4. Ngo relies on *Sael v. Ashcroft,* 386 F.3d 922 (9th Cir.2004), for the proposition that "the more serious and widespread the threat to the group in general, the less individualized the threat of persecution needs to be." *Sael,* 386 F.3d at 925 (internal quotation marks and citations omitted). This reasoning is part of the Ninth Circuit's "disfavored group" rationale which we have declined to follow. *See Lie v. Ashcroft,* 396 F.3d 530, 538 n. 4 (3d Cir.2005).